UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES POSTAL SERVICE,<br>475 L'Enfant Plaza, SW,<br>Washington, DC 20260,<br><br>   Plaintiff,<br><br>  v.<br><br>AMERICAN POSTAL WORKERS UNION,<br>AFL-CIO,<br>815 16th Street, NW, Suite 5100,<br>Washington, DC 20006,<br><br>NATIONAL ASSOCIATION OF LETTER<br>CARRIERS,<br>100 Indiana Ave, NW<br>Washington, DC 20001,<br><br>NATIONAL POSTAL MAIL HANDLERS<br>UNION,<br>815 16th Street, NW, Suite 5100,<br>Washington, DC 20006,<br><br>  - and -<br><br>NATIONAL RURAL LETTER CARRIERS<br>ASSOCIATION,<br>1630 Duke Street<br>Alexandria, VA 22314,<br><br>   Defendants. | Civil Action No. 25-3434 |

## COMPLAINT TO VACATE ARBITRATION AWARD

Plaintiff the United States Postal Service (the "Postal Service") brings this action against Defendants National American Postal Workers Union, AFL-CIO ("APWU"); National Association of Letter Carriers ("NALC"); National Postal Mail Handlers Union ("NPMHU"); and

National Rural Letter Carriers Association ("NRLCA") (collectively, the "Unions") to vacate an arbitration award and alleges as follows.

1. Pursuant to Title 39 U.S.C. § 1208(b), the Postal Service asks this Court issue an Order vacating the June 30, 2025 Award (the "June 2025 Award" or "Award") issued by Arbitrator Margo Newman (the "Arbitrator") in favor of the Unions in case no. 6X 21C-6X-C-3281423.

2. The Arbitrator acted beyond the scope of her authority by awarding remedies for subjects over which the Arbitrator lacked jurisdiction. For this reason, and for the reasons discussed herein, the Postal Service seeks vacatur of the June 2025 Award. *See* Award, Compl. Ex. 6.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 39 U.S.C. §§ 409(a) and 1208, and pursuant to 28 U.S.C. §§ 1331, 1339, 2201 and 2202.

4. Venue is proper pursuant to 39 U.S.C. § 1208(d) and 28 U.S.C. § 1391(b).

## PARTIES

5. The Postal Service is an independent establishment of the Executive Branch of the United States Government. 39 U.S.C. § 201. The Postal Service's headquarters are located at 475 L'Enfant Plaza, SW, Washington, DC 20260.

6. The Unions are labor organizations representing letter carriers, mail handlers, and others employed by the Postal Service throughout the United States. The Unions' headquarters are located in Washington, DC, at the addresses shown above in the case caption.

## BACKGROUND

7. At all times relevant to these proceedings, the Postal Service and the Unions (collectively, the "Parties") were signatories to collective bargaining agreements.

8. This case arises under the APWU National Agreement (the "AWPU Agreement"), a true and correct copy of which is attached as Exhibit 1 ("Compl. Ex. 1").

9. The Agreement provides the terms and conditions of employment for the bargaining unit employees represented by APWU.

10. The Agreement reserves to the Postal Service the right to develop its own hiring policies. Article 3 of the Agreement gives the Postal Service "the exclusive right, subject to the provisions of this Agreement and consistent with applicable laws and regulations" "to hire, promote, transfer, assign, and retain employees in positions within the Postal Service and to suspend, demote, discharge, or take other disciplinary action against such employees." APWU Agmt. at art. 3.2, Compl. Ex. 1.

11. Article 15.1 of the Agreement memorializes a comprehensive, multi-step grievance arbitration procedure for the resolution of any "dispute, difference, disagreement or complaint between the parties related to wages, hours, and conditions of employment" (the "grievance arbitration procedure"). The grievance arbitration procedure culminates in a hearing before an arbitrator appointed by the Parties. *Id.* at art. 15.4.

12. Following a hearing, arbitrators "should render an award . . . within thirty (30) days of the close of the record in the case." *Id.* at art. 15.4.B.9.

13. Arbitral awards are "final and binding," but "[a]ll decisions of arbitrators shall be limited to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended, or modified by an arbitrator." *Id.* at art. 15.4.A.6.

14. Article 16 of the Agreement provides that employees may be disciplined or discharged for just cause such as, but not limited to, insubordination, pilferage, intoxication (drugs or alcohol), incompetence, failure to perform work as requested, violation of the terms of this

Agreement, or failure to observe safety rules and regulations, and that such discipline or discharge shall be subject to the grievance-arbitration procedure provided for in this Agreement, which could result in reinstatement and restitution, including back pay. *Id*. at art. 16.1.

15. Article 19 of the Agreement states in relevant part: "Those parts of all handbooks, manuals and published regulations of the Postal Service, that directly relate to wages, hours or working conditions, as they apply to employees covered by this Agreement, shall contain nothing that conflicts with this Agreement, and shall be continued in effect except that the Employer shall have the right to make changes that are not inconsistent with this Agreement and that are fair, reasonable, and equitable." *Id.* at art. 19.1.

16. Article 12 of the Agreement expressly excludes probationary employees from access to grievance procedures for removal. *Id.* at art. 12.1 A.

17. Each of the Unions have collective bargaining agreements with the Postal Service. *See* NALC Agmt. Excerpt, Compl Ex. 2; NPMHU Agmt. Excerpt, Compl. Ex. 3; NRLCA Agmt. Excerpt, Compl. Ex. 4. In the arbitration at issue, the Arbitrator focused on the language of the APWU Agreement, which is substantially similar to the language in the other CBAs and, as such, any contractual interpretation in this matter is applicable to each Union's collective bargaining agreements.

## STATEMENT OF FACTS

18. The underlying dispute between the parties related to the Postal Service's decision to administratively separate employees when they do not pass the National Agency Check with Inquiries background check ("background check"), even when the background check is not complete until after the probationary period.

19. On February 20, 2024, APWU initiated a Step 4 dispute, arguing that the employees who are issued unfavorable background check determinations after the end of their probationary

period may grieve and arbitrate their administrative separations and that the Postal Service must show just cause for their separations. *See* Postal Serv. Post-Hearing Br. at 17, Compl. Ex. 5.

20. On June 7, 2024, APWU appealed the dispute to arbitration. *Id*.

21. On October 17, 2024, after informing the Postal Service of its position that the issue did not involve an interpretive dispute, NALC indicated its intent to intervene in the dispute. *Id*. at 18.

22. On March 12, 2024, NPMHU initiated a Step 4 dispute and appealed to arbitration on June 18, 2024. *Id*.

23. On December 2, 2024, NRLCA sent a letter asking the arbitrator to permit it to intervene, without objection from the Postal Service. *Id*.

24. This dispute, filed by APWU with the other Unions as intervenors came before this Arbitrator for a one-day hearing on December 12, 2024. *Id*.; *see also* Award at 5, Compl. Ex. 6. In the June 30, 2025, Award, the Arbitrator concluded that the case was arbitrable under Article 15 of the Agreements because no language in Article 15 excluded employees past their probationary period who failed their background checks. Award, Compl. Ex. 6. Thus, the Arbitrator found post-probationary employees separated for unfavorable background checks should be treated the same as post-probationary employees issued disciplinary removals for misconduct.

25. When the Postal Service issues job offers to employees represented by one of the Unions, the job offers state that the offer is conditional on the employee meeting suitability requirements, including background check requirements. Award at 7-8, Compl. Ex. 6.

26. The job offers also note that, in some circumstances, the individual's appointment might become effective prior to completing background check requirements, but continued employment remains conditional on meeting those requirements. *Id.* at 7-8.

27. The U.S. Postal Inspection Service ("Inspection Service") completes the background checks. *Id.* at 7.

28. An individual's appointment with the Postal Service may begin prior to completing their full background check due to operational needs, resulting in the Inspection Service performing an initial background check before the individual begins and then completes the full background check. *Id.* at 8.

29. The Postal Service repeatedly stated that the arbitrator did not have jurisdiction to decide the dispute in its post-hearing briefing. Postal Serv. Post-Hearing Br. at 19-24, Compl. Ex. 5.

30. The Postal Service stated in his post-hearing briefing that it did not demonstrate an intent to be bound by the arbitrator's decision on arbitrability and that the unions' claims facially are not governed by the Agreement. *Id*.

31. The parties stipulated that the Arbitrator would frame, determine, and decide the issue statement for the arbitration. Award at 5, Compl. Ex. 6.

32. The Arbitrator framed the issue statements as follows: (1) "Is a grievance protesting the separation or removal of a non-probationary employee based upon an unfavorable [background check] report substantively arbitrable under Article 15 of the" Agreement? and (2) "If said grievance is arbitrable, does the just cause standard of Article 16 of the [Agreement] apply?" *Id.* at 6-7.

33. At arbitration, the Postal Service argued that the Postal Reorganization Act, 39 U.S.C. § 1001, clearly provides Postal Service management with the exclusive right to hire employees, including the ability to determine the suitability requirements to be hired as a Postal Service employee. *Id.* at 16.

34. The Postal Service showed that administrative separations, such as those for failing to pass a background check, are not substantively arbitrable. *Id.* at 18. The dispute in this case before the Arbitrator is not arbitrable. It is beyond the Arbitrator's jurisdiction.

35. The Postal Service demonstrated that, where the Postal Service provided employees with conditional offers of employment while completing their background check, management retained the right to rescind those conditional offers if it determined that the employee did not obtain a favorable background because a favorable background check is a condition of employment with the Postal Service and thus the separation derives from its the Postal Service's right to hire, including the right to set the relevant conditions of employment. *Id.* at 16-17.

36. Because the employees in question were issued administrative separations and not disciplinary removals, the Postal Service argued that the Arbitrator did not have the authority to review the separations regardless of whether the separation occurred after the expiration of an employee's probationary period. *Id.* at 16.

37. The Unions argued that the case was arbitrable because the parties had a past practice of arbitrating separations of non-probationary employees with background check issues and "conditional employment" is not referenced in the relevant collective bargaining agreements. *Id.* at 12.

38. The Unions argued that Article 3 is not a limit on arbitration and that there is no contract language excluding permanent employees' grievances over their removal for an unfavorable background check rating or "conditional hires" from arbitration. *Id*. at 11.

39. The grievance arbitration process culminated in a one-day hearing before the Arbitrator on December 12, 2024. *Id.* at 5. The Arbitrator found in her June 2025 Award that the case was arbitrable.

## COUNT I
### Vacatur of Arbitration Award; 39 U.S.C. § 1208(b)

40. The Postal Service incorporates by reference herein the allegations set forth in the foregoing paragraphs.

41. The Arbitrator lacked jurisdiction to issue the June 2025 Award because the Postal Service did not consent to be bound by the arbitrator's decision.

42. The Arbitrator further lacked jurisdiction to issue the June 2025 Award because the Agreement does not contain any provisions evidencing an agreement to submit this type of dispute to arbitration.

43. The Arbitrator's finding in the June 2025 Award that the case was arbitrable conflicts with and does not draw its essence from the plain and unambiguous terms of the parties' Agreement, including but not limited to Articles 3, 12, 15, 16, and 19.

44. By issuing the June 2025 Award, the Arbitrator acted outside of her authority and impermissibly dispensed her own notions of industrial justice, and her Award should therefore be vacated.

**PRAYER FOR RELIEF**

WHEREFORE, the Postal Service respectfully requests that the Court enter judgment vacating, setting aside, and declaring null and void the June 30, 2025 arbitration award finding that (1) a grievance protesting the separation or removal of a non-probationary employee based upon an unfavorable background check report is substantively arbitrable under Article 15 of the Agreement and (2) in such an arbitration, the Postal Service must prove that it had just cause for the separation or removal under the principles of Article 16 of the Agreement, along with any and all other necessary and proper relief.

Dated: September 26, 2025

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: _____/s/ Brian P. Hudak_____
BRIAN P. HUDAK, D.C. Bar #90034769
Chief, Civil Division
601 D Street, NW
Washington, DC 20530
(202) 252-2549

*Attorneys for the United States of America*