# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES POSTAL SERVICE,

               Plaintiff,

v.

AMERICAN POSTAL WORKERS UNION,
AFL-CIO,

NATIONAL ASSOCIATION OF LETTER
CARRIERS, AFL-CIO,

NATIONAL POSTAL MAIL HANDLERS
UNION,

and

NATIONAL RURAL LETTER CARRIERS'
ASSOCIATION,

               Defendants.

Case No. 1:25-cv-3434 (JMC)

## DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

### ANSWER AND AFFIRMATIVE DEFENSES

Defendants American Postal Workers Union, AFL-CIO ("APWU"), National Association of Letter Carriers, AFL-CIO ("NALC"), National Postal Mail Handlers Union ("NPMHU"), and National Rural Letter Carriers' Association ("NRLCA") (together "Defendants"), by and through their undersigned counsel, hereby answer the allegations of the Postal Service's Complaint (ECF Doc. 1). The numbered paragraphs below answer the corresponding numbered paragraphs in the Complaint. All allegations not expressly admitted are denied.

1

1.      Defendants admit that Plaintiff considers this to be an action to vacate an arbitration award relating to the June 30, 2025, arbitration award issued by Arbitrator Margo Newman in Case No. 6X-21C-6X-C 24165358 ("the NACI Award").

2.      Defendants deny that Arbitrator Newman acted beyond the scope of her authority or lacked jurisdiction to issue the NACI Award.  Defendants deny that Plaintiff is entitled to vacatur of the award and all other allegations in this paragraph.

## JURISDICTION AND VENUE

3.      This paragraph of the Complaint is a jurisdictional statement and conclusion of law to which no response is required.

4.      This paragraph of the Complaint is a venue statement and conclusion of law to which no response is required.

## PARTIES

5.      Admitted.

6.      Admitted that Defendants are labor organizations who, combined, represent almost all of the bargaining unit employees at the Postal Service and that each of their headquarters are located in Washington, DC except the National Rural Letter Carriers' Association which is headquartered in Alexandria, VA.

## BACKGROUND

7.      Admitted that Defendants are each party to their own national collective bargaining agreement with the Postal Service that provides the terms and conditions of employment for the bargaining unit of workers represented by each Defendant.

8.      Admitted that the dispute addressed in the NACI Award that is the subject of this Complaint arose under the 2021 collective bargaining agreement between the APWU and the Postal Service ("2021 APWU National Agreement"), attached to the Complaint as Document 1-1.

9.      Admitted that the 2021 APWU National Agreement sets out the terms and conditions of employment for the APWU bargaining unit including a multi-step grievance procedure that results in final and binding arbitration before a neutral arbitrator to resolve disputes arising under the contract.  (*See* ECF Doc. 1-1.)

10.      Admitted that the 2021 APWU National Agreement has a "Management Rights" article that states in full:

### ARTICLE 3
### MANAGEMENT RIGHTS

The Employer shall have the exclusive right, subject to the provisions of this Agreement and consistent with applicable laws and regulations:

A. to direct employees of the Employer in the performance of official duties;

B. to hire, promote, transfer, assign, and retain employees in positions within the Postal Service and to suspend, demote, discharge, or take other disciplinary action against such employees;

C. to maintain the efficiency of the operations entrusted to it;

D. to determine the methods, means, and personnel by which such operations are to be conducted;

E. to prescribe a uniform dress to be worn by designated employees; and

F. to take whatever actions may be necessary to carry out its mission in emergency situations, i.e., an unforeseen circumstance or a combination of circumstances which calls for immediate action in a situation which is not expected to be of a recurring nature.

(The preceding Article, Article 3, shall apply to PSEs)

(ECF Doc. 1-1 at 6.)[1]  Defendants deny all other allegations in this paragraph.

11.    Admitted with clarification that the whole of Article 15 of the 2021 APWU National Agreement sets out the parties' "Grievance-Arbitration Procedure" and that Article 15.1 referenced in the Complaint states:

> **Section 1. Definition**
> A grievance is defined as a dispute, difference, disagreement or complaint between the parties related to wages, hours, and conditions of employment. A grievance shall include, but is not limited to, the complaint of an employee or of the Union which involves the interpretation, application of, or compliance with the provisions of this Agreement or any Local Memorandum of Understanding not in conflict with this Agreement.

(ECF Doc. 1-1 at 87.)  Defendants further clarify that Article 15.4 in the 2021 APWU National Agreement covers "Grievance Procedure-General" and that grievances under the APWU National Agreement that are unresolved by the APWU and the Postal Service can be appealed to arbitration before an arbitrator jointly selected by the Postal Service and the APWU in accordance with Article 15.5.A.  (ECF Doc. 1-1 at 97-101.)

12.    Admitted with clarification that there is no Article 15.4.B.9 in the 2021 APWU National Agreement, but that Article 15.5.B.8 states that "The arbitrator in any given case should render an award therein within thirty (30) days of the close of the record in the case."  (ECF Doc. 1-1 at 103.)

13.    Admitted with clarification that there is no Article 15.4.A.6 in the 2021 APWU National Agreement, but that Article 15.5.A.6 is an agreement with the Postal Service that:

> 6. All decisions of an arbitrator will be final and binding. All decisions of arbitrators shall be limited to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended, or modified by an arbitrator. Unless otherwise provided in this Article, all costs, fees, and expenses charged by an arbitrator will be shared equally by the parties.

---

[1] The cited page numbers refer to the document's original pagination.

(ECF Doc. 1-1 at 100.)

14.    Admitted with clarification that Article 16.1 of the 2021 APWU National Agreement states that:

### ARTICLE 16
### DISCIPLINE PROCEDURE

**Section 1. Principles**

In the administration of this Article, a basic principle shall be that discipline should be corrective in nature, rather than punitive. No employee may be disciplined or discharged except for just cause such as, but not limited to, insubordination, pilferage, intoxication (drugs or alcohol), incompetence, failure to perform work as requested, violation of the terms of this Agreement, or failure to observe safety rules and regulations. Any such discipline or discharge shall be subject to the grievance-arbitration procedure provided for in this Agreement, which could result in reinstatement and restitution, including back pay.

(ECF Doc. 1-1 at 106.)  All other allegations are denied.

15.    Admitted that this paragraph is an excerpt from Article 19 of the 2021 APWU National Agreement.  (ECF Doc. 1-1 at 120-121.)

16.    Admitted with clarification that Article 12.1.A states: "The probationary period for a new employee shall be ninety (90) calendar days. The Employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees shall not be permitted access to the grievance procedure in relation thereto." (ECF Doc. 1-1 at 47.)  To the extent that this paragraph contains other factual allegations, Defendants deny such allegations.

17.    Admitted that each Defendant has its own collective bargaining agreement with the Postal Service that includes similar Grievance-Arbitration Procedures as found in the 2021 APWU National Agreement.  (*See* ECF Doc. 1-2 (excerpts of National Association of Letter Carriers, AFL-CIO National Agreement); ECF Doc. 1-3 (excerpts of National Postal Mail Handlers Union

National Agreement); and ECF Doc. 1-4 (excerpts of National Rural Letter Carriers' Association National Agreement.)  Defendants deny all other allegations in this paragraph.

## STATEMENT OF FACTS

18.     Denied.  The grievance filed by the APWU in accordance with Article 15 of the 2021 APWU National Agreement challenged whether the National Agreement limited the right of a non-probationary employee to grieve being separated from their job because of the results of their National Agency Check with Inquiries ("NACI") background check and whether the Postal Service must have just cause in accordance with Article 16 for such a separation.

19.     Admitted that the APWU initiated a national "Step 4" dispute dated February 20, 2024, that was an uncontested APWU exhibit in the hearing before Arbitrator Newman. Defendants deny the Postal Service's characterization of the APWU dispute and all other allegations in this paragraph.

20.     Denied.  In accordance with Article 15.2.Step 4(a) of the 2021 APWU National Agreement, (ECF Doc. 1-1 at 94), the Postal Service and the APWU exchanged written position statements dated June 7, 2024, regarding the dispute initiated by the APWU.  Those position statements were joint exhibits in the hearing before Arbitrator Newman.

21.     Admitted.

22.     Admitted.

23.     Admitted.

24.     Admitted that the APWU's dispute in which the other Defendants intervened was heard by Arbitrator Newman in a one-day hearing on December 12, 2024.  Defendants deny all other allegations in this paragraph.

25.     Denied.  The NACI Award recounts testimony offered by the Postal Service that the Postal Service's job offers "are labeled 'conditional job offer.'" (ECF Doc. 1-6 at 8.)

26.     Denied.  The NACI Award recounts testimony offered by the Postal Service that the Postal Service advises applicants not to resign from their current jobs.  (ECF Doc. 1-6 at 8.)

27.     Admitted that the Postal Service's Inspection Service performs the NACI background checks.   To the extent that this paragraph contains other factual allegations, Defendants deny such allegations.

28.     Denied.  The NACI Award recounts testimony offered by the Postal Service that a newly hired employee's employment may begin before their background check is completed. (ECF Doc. 1-6 at 8.)

29.     Denied.  The Postal Service never contended that Arbitrator Newman did not have jurisdiction to decide the APWU's dispute at any point in the grievance-arbitration process.

30.     Denied.  The Postal Service never expressed in its post-hearing brief that it would not be bound by Arbitrator Newman's NACI Award or that the APWU's dispute was not governed by the 2021 APWU National Agreement.  Rather, the Postal Service argued that a separation of a non-probationary bargaining unit employee due to the results of their background check is not substantively arbitrable.  (*See* ECF Doc. 1-5 at 6.)

31.     Denied.  The Parties stipulated on the record that Arbitrator Newman could decide the merits of the interpretative issues raised in the APWU's dispute.  The stipulation was recorded in the hearing transcript, attached hereto by Defendants as Exhibit 1, as follows:

> ARBITRATOR NEWMAN: Thank you. Okay.   And I assume that the parties agree and stipulate that I can frame the issue, determine the issue, and decide the issue. Do you so stipulate?
>
> MS. HOLMES [for APWU]: Yes.

MS. HEIMAN [for the Postal Service]: Yes.

MR. DECHIARA [for NALC]: Yes.

MR. FAVREAU [for NRLCA]: Yes.

MR. CLASH-DREXLER [for NPMHU]: Yes.

ARBITRATOR NEWMAN: Okay. Thank you.  The stipulation's received.

(ECF Doc. 15-1 at 13-14.)

32.     This paragraph is an excerpt from the NACI Award, (ECF Doc. 1-6 at 6-7), to which

no response is required.

33.     Admitted with clarification that the NACI Award notes that "[a]t the outset, the

Unions made clear that they are not challenging the right of the Postal Service to set eligibility

criteria and determine suitability under its established standards."  (ECF Doc. 1-6 at 7.)

34.     Denied.  Arbitrator Newman held that:

I find that a complaint by a non-probationary employee with respect to the results
of such determination is a dispute related to a condition of employment that clearly
falls within the definition of a grievance in Article 15. I believe that [Postal Service
witness] Richardson acknowledged as much in her June 7, 2023 email confirming
her understanding of the agreement she reached with Cash when dealing with the
initial Step 4 on this issue, where at the regional level, the Postal Service took the
position that the cases (grieving the separation of non- probationary employees for
receiving an unfavorable NACI) were not arbitrable. That email concludes by
saying that

"While passing the NACI is considered a condition of employment,
if the results of the NACI are not completed prior to the conclusion
of the evaluation/probation period, then the employee would have
access to the grievance/arbitration procedure to challenge the
separation. The challenge would be based on local circumstances."

In her testimony, [Postal Service manager and witness] Richardson attempted to
draw a distinction between a post-probationary employee having access to the
grievance procedure and the Postal Service's argument that the underlying
grievance is not substantively arbitrable since there is no violation of the contract
to be grieved. Her opinion that permitting suitability determinations to be
reviewable in arbitration would create unfairness since it would mean two different

rules regarding unfavorable NACIs based on when that determination was made is not convincing since, admittedly, the parties themselves explicitly created different standards for removal/separations based on when the action takes place. They did not do so for challenges to separation actions based on an unfavorable NACI that takes place post-probation. Absent any clear language exhibiting an intention of the parties to exclude this type of dispute from the coverage of Article 15, I conclude that the matter is substantively arbitrable.

(ECF Doc. 1-6 at 22-23.)

35.     Denied.  Arbitrator Newman held that:

The Postal Service's notice to applicants/employees that their appointments are "conditional" on them receiving a favorable NACI does not change this fact. The Postal Service is not able to unilaterally create a class of "conditional employees" to avoid the consequences of their becoming regular employees with full collective bargaining rights.  As noted by the Unions, there is no reference to such class of employees in the National Agreement, nor any reference to "conditional employment." ELM 346 references Conditional Offers of Appointment and notes that offers of employment must, among other things, include instructions for required conditions that must be fulfilled after entrance on duty, including obtaining a security clearance. It does not exempt or further classify employees undergoing such conditions. I also acknowledge that the parties agreed in Article 12.1.C that, once an employee completes the probationary period, his/her seniority is computed from the initial day of employment, whether full or part-time.  There is no exclusion for "conditional" employees or those awaiting NACI results. Thus, employees who receive an unfavorable NACI after they have completed their probationary period are seniority employees, with contractual seniority rights.

(ECF Doc. 1-6 at 25.)

36.     Denied.  The Parties did not ask Arbitrator Newman to review any individual cases of non-probationary employees being terminated because of their NACI background check results and the Postal Service did not contest Arbitrator Newman's authority to decide the interpretative issues raised in the APWU's dispute.

37.     Denied.  The Postal Service did not contest the arbitrability of the APWU's dispute. Rather, Defendants made arguments in support of the Unions' position on one of the underlying interpretive issues, to wit that the Unions' collective bargaining agreements grant non-

probationary bargaining unit employees the right to arbitrate a grievance over being separated

because of their NACI background check results.

38.    Admitted with clarification that Arbitrator Newman held that:

Arbitrator Snow went through the analysis used by courts regarding substantive arbitrability, considering (1) whether there is an arbitration clause in the contract; (2) whether the parties excluded from its coverage the subject matter of the dispute; and (3) what is the evidence of such an exclusion.  In that case, in finding the dispute…to be substantively arbitrable, he noted that there was no express exclusion of the subject matter present in the National Agreement.

Similarly, in this case, the only express prohibition to access to the grievance procedure in the National Agreement is Article 12.1(A), where the parties negotiated the right of the Postal Service to separate any probationary employee during the probationary period, and such employee "shall not be permitted access to the grievance procedure in relation thereto." There is no similar provision anywhere in the National Agreement with respect to non-probationary employees.

(ECF Doc. 1-6 at 19.)

39.    Admitted that the Parties had a one-day hearing before Arbitrator Newman on

December 12, 2024.  Defendants deny the remainder of the paragraph.  With regard to the matter

of a non-probationary employee's grievance over "separation actions based on an unfavorable

NACI [background check] that takes place post-probation," Arbitrator Newman held that,

"[a]bsent any clear language exhibiting an intention of the parties to exclude this type of dispute

from the coverage of Article 15, I conclude that the matter is substantively arbitrable."  (ECF Doc.

1-6 at 23.)

**COUNT I**
**Vacatur of Arbitration Award; 39 U.S.C. § 1209(b)**

40.    Defendants repeat and re-allege their answers set forth in the proceeding paragraphs

as though fully set forth herein.

41.     This paragraph is a conclusion of law to which no response is required. To the extent this paragraph is deemed to contain any factual allegations, Defendants deny such allegations and specifically deny that there is any basis in fact or law for Plaintiff's claims.

42.     This paragraph is a conclusion of law to which no response is required. To the extent this paragraph is deemed to contain any factual allegations, Defendants deny such allegations and specifically deny that there is any basis in fact or law for Plaintiff's claims.

43.     This paragraph is a conclusion of law to which no response is required. To the extent this paragraph is deemed to contain any factual allegations, Defendants deny such allegations and specifically deny that there is any basis in fact or law for Plaintiff's claims.

44.     This paragraph is a conclusion of law to which no response is required. To the extent this paragraph is deemed to contain any factual allegations, Defendants deny such allegations and specifically deny that there is any basis in fact or law for Plaintiff's claims.

## PRAYER FOR RELIEF

Defendants deny the allegations set forth in the "WHEREFORE" clause and sub-paragraphs (1) and (2), except that they admit that the Postal Service requests judgment against Defendants and that it seeks the relief recited therein. Defendants deny that the Postal Service is entitled to any such judgment, relief, or remedies.

## DEFENDANTS' AFFIRMATIVE AND OTHER DEFENSES

The Defendants assert the following affirmative and other defenses without assuming any burden of proof that otherwise does not exist as a matter of law.

1.     The Complaint fails to state grounds upon which the Court may vacate the NACI Award under the Postal Reorganization Act or any other applicable statute.

2.      The Postal Service waived its defenses that the APWU's national dispute is not arbitrable and that Arbitrator Newman did not have jurisdiction to decide the APWU's national dispute by not raising the defenses to the Arbitrator and, in addition, by, among other things, stipulating that Arbitrator Newman had jurisdiction to decide the issues before her.

3.      Defendants reserve the right to assert additional defenses or claims which may become known during the course of briefing.

## COUNTERCLAIM

Defendants hereby assert this counterclaim against the Postal Service, pursuant to Fed. R. Civ. P. 13, for an order confirming and enforcing the NACI Award:

1.      Section 1001 (e) of the Postal Reorganization Act of 1970 allows the Postal Service to exercise certain enumerated rights "consistent with section 1003 and chapter 12 of this title and applicable laws, regulations, and collective-bargaining agreements."

2.      Article 15 "Grievance-Arbitration Procedure" has been a term of every collective bargaining agreement to which the APWU has been a party with the Postal Service since the first collective bargaining agreement following postal reorganization in 1970.

3.      Article 15.4.D of the 2021 APWU National Agreement states in part:

It is agreed that in the event of a dispute between the Union and the Employer as to the interpretation of this Agreement, such dispute may be initiated at the Step 4 Level by either party. Such a dispute shall be initiated in writing and must specify in detail the facts giving rise to the dispute, the precise interpretive issues to be decided and the contention of either party. Thereafter the parties shall meet in Step 4 within thirty (30) days in an effort to define the precise issues involved, develop all necessary facts, and reach agreement. Should they fail to agree, then, within fifteen (15) days of such meeting, each party shall provide the other with a statement in writing of its understanding of the issues involved, and the facts giving rise to such issues. In the event the parties have failed to reach agreement within sixty (60) days of the initiation of the dispute in Step 4, the Union then may appeal it to arbitration, within thirty (30) days thereafter.

(ECF Doc. 1-1 at 98.)

4.       The APWU and the Postal Service agreed in Article 15.5.A.9 of the 2021 APWU National Agreement that "Any dispute as to arbitrability may be submitted to the arbitrator and be determined by such arbitrator.  The arbitrator's determination shall be final and binding."  (ECF Doc. 1-1 at 9.)

5.       In Article 12.1.A of the 2021 APWU National Agreement, the APWU and the Postal Service agreed to limit probationary employees' access to the Article 15 grievance procedure to challenge their separation during their probationary period.  Article 12.1.A states in relevant part:

> The probationary period for a new employee shall be ninety (90) calendar days. The Employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees shall not be permitted access to the grievance procedure in relation thereto.

(ECF Doc. 1-1 at 47.)

6.       APWU bargaining unit employees who are separated as a result of discipline and who are beyond their probationary period (referred to in the NACI Award and the pleadings as "non-probationary employees") can access the grievance procedure, including arbitration, to challenge whether there was just cause as required by Article 16 of the APWU National Agreement for their separation.

7.       The dispute filed by the APWU on February 20, 2024, that was decided by Arbitrator Newman ("APWU NACI Dispute") was a national interpretative dispute filed in accordance with Article 15, Sections 2 and 4 of the APWU National Agreement about the meaning of the 2021 APWU National Agreement. A true and correct copy of the APWU NACI Dispute is attached as Exhibit 2.  (ECF Doc. 15-2.)

8.    The specific interpretive issue the APWU raised in the APWU NACI Dispute was "whether a non-probationary employee who is discharged by the Postal Service based on the Postal Service's assessment of the employee's NACI background check can grieve and arbitrate the Postal Service's decision under Article 15 and Article 16 of the National Agreement?" (ECF Doc. 15-2 at 1.)

9.    The APWU and the Postal Service met on the APWU NACI Dispute at Step 4 as set out in the procedure in Article 15.4.D of the 2021 APWU National Agreement. (*See* ECF Doc. 1-1 at 98.)

10.    The APWU and the Postal Service exchanged written position statements on the APWU NACI Dispute as set out in the procedure in Article 15.4.D of the 2021 APWU National Agreement. (*See* ECF Doc. 1-1 at 98.)

11.    Arbitrator Newman was selected by the APWU and the Postal Service to serve on the APWU National Panel of arbitrators in accordance with Article 15.5.A.8. (*See* ECF Doc. 1-1 at 101.)

12.    The Postal Service and the APWU agreed to schedule the APWU NACI Dispute before Arbitrator Newman, and the Postal Service sent Arbitrator Newman a scheduling letter confirming her appointment as the arbitrator and that she should hold a hearing on December 12, 2024, to decide the APWU NACI Dispute.

13.    At the December 12, 2024, hearing before Arbitrator Newman, the Postal Service offered its statement of the issues to the Arbitrator, presented an opening statement, offered thirty-four exhibits and two witnesses, was permitted the opportunity to cross-examine Defendants' witnesses, and agreed to submit a post-hearing brief in lieu of closing statements.

14.     The December 12, 2024, hearing was transcribed by a court reporter.  The Postal

Service did not submit any errata of the hearing transcript. (*See* ECF Doc. 15-1.)

15.     At the hearing, following statements by the Unions, the Postal Service made a

statement about its view of the issues before the Arbitrator.  Specifically, the following statement

was made by counsel for the Postal Service during the December 12, 2024, hearing and was

recorded in the hearing transcript at pages 12-13:

> ARBITRATOR NEWMAN: Okay. Okay. For the Postal Service, would you like
> to state the issue?
>
> MS. HEIMAN [for the Postal Service]: Yes. The Postal Service has two proposed
> issue statements for your consideration. The first: Whether challenges to
> administrative separations issued to individuals who have completed a probationary
> period for failure to meet a condition of employment based on the Inspection
> Service's unfavorable adjudication of a NACI background check are not
> substantively arbitrable because the separations are effectuated under authority
> external to and do not implicate the terms and conditions of the CBA.
>
> Our second issue statement is: Because the Postal Service has the exclusive right to
> set hiring suitability criteria, do non- disciplinary administrative separations of non-
> probationary employees for failure to meet a condition of employment based on the
> Inspection Service's unfavorable adjudication of NACI background checks violate
> Article 15 and/or 16 of the collective bargaining agreement?

(ECF Doc. 15-1 at 12-13.)

16.     At the hearing, the Postal Service stipulated that Arbitrator Newman had authority

to decide the APWU NACI Dispute.  Specifically, the following exchange occurred during the

December 12, 2024, hearing and was recorded in the hearing transcript at pages 13-14 immediately

following the Postal Service's recitation of what it believed were the issues before the Arbitrator:

> ARBITRATOR NEWMAN: Thank you. Okay.  And I assume that the parties agree
> and stipulate that I can frame the issue, determine the issue, and decide the issue.
> Do you so stipulate?
>
> MS. HOLMES [for APWU]: Yes.
>
> MS. HEIMAN [for the Postal Service]: Yes.

MR. DECHIARA [for NALC]: Yes.

MR. FAVREAU [for NRLCA]: Yes.

MR. CLASH-DREXLER [for NPMHU]: Yes.

ARBITRATOR NEWMAN: Okay. Thank you.  The stipulation's received.

(ECF Doc. 15-1 at 13-14.)

17.    In its opening argument at the December 12, 2024 hearing, the Postal Service did not challenge Arbitrator Newman's authority to decide the APWU NACI Dispute but instead affirmatively requested that Arbitrator Newman issue an award, urging her to adopt the Postal Service's position on the APWU NACI Dispute:  "Arbitrator Newman, today we're asking you to declare that grievances challenging NACI separations issued after a person has completed probation are not arbitrable because the collective bargaining agreements are not implicated."  This statement appears in the hearing transcript at page 62.  (ECF Doc. 15-1 at 62.)

18.    During the December 12, 2024, hearing, the Postal Service provided testimony confirming its view that Arbitrator Newman had authority to decide the APWU NACI Dispute. Specifically, Postal Service witness Shannon Richardson, the Postal Service's Director of Contract Administration for the APWU, testified that the Postal Service agreed that the APWU NACI Dispute was "appropriately before Arbitrator Newman."  (ECF Doc. 15-1 at 284.)

19.    The Postal Service submitted a 47-page post-hearing brief to Arbitrator Newman following the December 12, 2024, hearing.  (*See* ECF Doc. 1-5.)

20.    In its post-hearing brief, the Postal Service wrote that "[t]he parties stipulated that the Arbitrator would frame, determine, and decide the issue."  (ECF Doc. 1-5 at 5.)

21.    In its opening statement and post-hearing brief, the Postal Service identified an issue as "[w]hether challenges to administrative separations," from employment of non-

probationary employees who received an unfavorable NACI background check "are not substantively arbitrable...." (ECF Doc. 1-5 at 5; ECF Doc. 15-1 at 13.) The Postal Service took the position that such challenges by individual non-probationary employees are not substantively arbitrable. Nowhere in its statement of the issues did the Postal Service challenge Arbitrator Newman's authority to decide the APWU NACI Dispute.

22.    On June 30, 2025, Arbitrator Newman issued the final and binding NACI Award resolving the APWU NACI Dispute. The NACI Award provided in the **Award Summary** that:

    1.    A grievance protesting the separation/removal of a non-probationary employee based upon an unfavorable NACI report is substantively arbitrable under Article 15.

    2.    In such arbitration, the Postal Service must prove that it had just cause for the separation/removal under the principles of Article 16.

(ECF Doc. 1-6 at 2.)

23.    Arbitrator Newman had authority under Article 15 of the 2021 APWU National Agreement to issue the NACI Award.

24.    Moreover, the Postal Service consented to Arbitrator Newman deciding the APWU NACI Dispute, including through its formal stipulation at the December 12, 2024, hearing; through its statement of the issues, opening statement and its testimony at the hearing; and through its full participation, without challenge to Arbitrator Newman's authority, throughout every phase of the arbitration proceeding.

25.    Arbitrator Newman's resolution of the issues in the APWU NACI Dispute drew its essence from the terms of the 2021 APWU National Agreement as well as the terms of the NALC, NPMHU, and NRLCA National Agreements.

26.    In particular, Arbitrator Newman based her resolution of the first issue -- that "a grievance protesting the separation/removal of a non-probationary employee based on an

17

unfavorable NACI report is substantively arbitrable under Article 15" -- on her interpretation and understanding of the 2021 APWU National Agreement, including Articles 12 and 15.

27.    Arbitrator Newman based her resolution of the second issue -- that in such arbitrations USPS must prove just cause under Article 16 -- on her interpretation and understanding of the 2021 APWU National Agreement, including Articles 15, 16 and 19.

28.    Articles 12, 15, 16, and 19 of the 2021 APWU National Agreement are, in relevant part, identical to the same-numbered Articles in the NALC, NPMHU, and NRLCA National Agreements.

29.    To date, the Postal Service has failed and refused to comply with the NACI Award in grievances concerning non-probationary bargaining unit employees' separation or removal based on an unfavorable NACI report.

**CAUSE OF ACTION -
CONFIRM AND ENFORCE THE NACI AWARD**

30.    Defendants incorporate by this reference the allegations in the foregoing paragraphs.

31.    The NACI Award is a final and binding arbitration award made and issued in accordance with the grievance-arbitration process in the Parties' collective bargaining agreements.

32.    The NACI Award draws its essence from the 2021 APWU National Agreement.

33.    The Postal Service has failed and refused to comply with the NACI Award.

34.    The NACI Award should be confirmed and enforced by the Court.

**PRAYER FOR RELIEF**

WHEREFORE, Defendants pray that this Court:

1.    Enter a judgment confirming and enforcing Arbitrator Newman's June 30, 2025, arbitration award;

2.      Enter a declaratory judgment that the Postal Service must abide by and apply Arbitrator Newman's June 30, 2025, arbitration award;

3.      Award to Defendants their costs and reasonable attorneys' fees expended to enforce the NACI Award in this Court; and

4.      Award to Defendants any and all other relief as the Court deems just and proper.


Dated:  February 10, 2026              Respectfully submitted,

*/s/ Melinda K. Holmes*
Melinda K. Holmes (DC Bar # 458043)
mholmes@murphypllc.com
Adreanna Sellers (DC Bar # 90003476)
asellers@murphypllc.com
MURPHY ANDERSON PLLC
1401 K Street N.W., Suite 300
Washington, DC 20005
Tel. (202) 223-2620

Counsel for the American Postal Workers Union, AFL-CIO

*/s/ Peter D. DeChiara*
Peter D. DeChiara (admitted *pro hac vice*)
pdechiara@cwsny.com
Olivia R. Singer (admitted *pro hac vice*)
osinger@cwsny.com
COHEN, WEISS AND SIMON LLP
909 Third Avenue, 12th Floor
New York, NY 10022-4731
Tel. (212) 356-0216

Lucas R. Aubrey (D.C. Bar No. 982849)
aubrey@shermandunn.com
SHERMAN DUNN P.C.
900 Seventh Avenue, N.W., Suite 1000
Washington, DC 20001
Tel.  (202) 785-9300

Counsel for the National Association of Letter Carriers, AFL-CIO

19

*/s/ Matthew Clash-Drexler*
Matthew Clash-Drexler (DC Bar # 477334)
mcdrexler@bredhoff.com
BREDHOFF & KAISER, PLLC
805 15th Street, N.W.
Washington, DC 20036
Tel. (202) 842-2600

Counsel for the National Postal Mail Handlers Union

*/s/ Jean-Marc Favreau*
Jean-Marc Favreau (DC Bar # 473235)
favreau@peerganlaw.com
Michael Gan (DC Bar # 439900)
gan@peerganlaw.com
Mark Gisler (DC Bar # 474628)
gisler@peerganlaw.com
PEER, GAN, GISLER & FAVREAU LLP
1730 Rhode Island Avenue, N.W., Suite 715
Washington, DC 20036
Tel. (202) 223-1900

Counsel for the National Rural Letter Carriers' Association

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I served a copy of the foregoing document on the following

through the CM/ECF system:

Sean Tepe
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2533


Dated:  February 10, 2026         ***/s/ Melinda K. Holmes***
                                  Melinda K. Holmes (DC Bar # 458043)
                                  mholmes@murphypllc.com
                                  Adreanna Sellers (DC Bar # 90003476)
                                  asellers@murphypllc.com
                                  MURPHY ANDERSON PLLC
                                  1401 K Street N.W., Suite 300
                                  Washington, DC 20005
                                  Tel. (202) 223-2620

                                  Counsel for the American Postal Workers Union, AFL-CIO